**FILED**

JAN **2 7** 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK



2

3   REHAN SHEIKH, Engineer
    State Bar Associate Member
4   P.O. Box 869
    French Camp, CA 95231
5   Telephone:    (209) 982 9039
    Facsimile:    (209) 468 6392
6   rehansheikh@yahoo.com

7
    Representative For;
8   FARZANA SHEIKH, M.D.                    **2** 1 0 - Ω - 0 2 1 3 Γ℩ ϬϾ᠁

9

10                    **UNITED STATES DISTRICT COURT**

11         **EASTERN DISTRICT OF CALIFORNIA (SACRAMENTO DIVISION)**

12

13                                          **PETITION FOR WRIT OF REVIEW;**

14  FARZANA SHEIKH, M.D.
              Plaintiff,                    **ON DENIAL OF APPLICATION FOR**
15        v.                                **PHYSICIAN'S LICENSE BY MEDICAL**
                                            **BOARD OF CALIFORNIA**
16  MEDICAL BOARD OF CALIFORNIA             **CCP § 1094.5**
              Defendant
17
    and                                     **DECLARATORY RELIEF;**
18
                                            **CALIFORNIA BUSINESS AND**
19  THE STATE OF CALIFORNIA                 **PROFESSIONAL CODE § 2335 VIOLATES**
              Defendant                     **PHYSICIAN'S CONSTITUTIONAL RIGHT**
20                                          **TO DUE PROCESS**
                                            **42 U.S.C.A § 183**
21

22

23         Plaintiff Farzana Sheikh[1], M.D. hereby respectfully comes before the Court via her representative and

24  seeks Writ of this Court for setting aside an order of denial of her application for physician's license by the

25  Medical Board of California.  Further Dr. Sheikh seeks approval of her application for Physician's and

26  Surgeon's License. Dr. Sheikh will present Memorandum of Points and Authorities before this Court for

27

28  _____
    [1] Petitioner Farzana Sheikh, M.D. is hereby referred as Dr. Sheikh.

seeking such relief on the basis of, including but not limited to, the findings are not supported by facts and the Board has abused its discretion. Dr. Sheikh will seek reversal of the order of Denial on factual, procedural, statutory and finally on Constitutional basis. The final decision did not find Dr. Sheikh guilty of any of Medical Board's accusation yet the State has denied the license. Plaintiff will also demonstrate that the denial of application by the Board is arbitrary and capricious.

The Medical Board of California brings accusations against physicians without testifying the credibility of its accusations. Then the Medical Board makes a final determination on its own accusations. During each step, there is ex-parte communications by the Medical Board with the decision makers. The Members of the Medical Board make a final decision in a secret ballot without reviewing any records in a manner similar to 'Democratic Ignorance'. The Board Members only review limited information such as physician's Name, Gender and Proposed 'Disciplinary Punishment' before making a decision.

The plaintiff seeks a declaratory relief that the disciplinary process including California Business and Professional Code Section 2335 (decision via poll without reviewing records) is in violation of physician's Constitutional Right to Due Process. Review by the Board Members is the only time when accusations of the Medical Board can be directly reviewed and Judged by physicians who are appropriate experts on matters relevant to quality of patients care. Dr. Sheikh is not stating any claims against Defendant(s) in this Writ of Administrative Review.

Dr. Sheikh contends that the statute constitutes Unconstitutional delegation and that the State has not adopted any intelligible principal to protect physicians vested Property Right. Due Care must be exercised, in order to protect physician's vested property rights, not only before bringing accusations, but also when a final decision is delivered during the disciplinary process. Due diligence is not a discretionary duty rather it is a ministerial function and it is a mandatory obligation.

Dr. Sheikh will present Memorandum of Points of Authorities to seek writ of this Court for setting aside the denial of her application for license by the Medical Board and will seek an order for approval of her application for license.

## I. PARTIES

1) Dr. Sheikh is a resident of County of San Joaquin and she is a citizen of the United States.

2) Defendant Medical Board of California and the State of California are based in Sacramento.

## II. JURISDICTION

1) This Court has jurisdiction pursuant to 42 U.S.C.A § 183 to hear plaintiff's arguments to determine whether California Business and Professional Code §2335 is in violation of Physician(s) Constitutional Right to Due Process.

2) This Court has supplemental Jurisdiction on Dr. Sheikh's Petition for Writ of Review.

3) This Court has Civil Rights jurisdiction pursuant to 28 U.S.C. § 1343 and Title VII 42 U.S.C.A § 181 as special defense that plaintiff has presented in the Administrative Proceedings for seeking her application for license.

## III. INTRODUCTION

Dr. Sheikh applied for and received a training license (PTAL) with the State of California in the Year 2002. Dr. Sheikh started her residency training in or around June 2005 with a Family Medicine Residency Program. Dr. Sheikh initially applied for license with the Medical Board of California in or around September 2007. Since then the Board has reviewed her application for license several times and it has been denying Dr. Sheikh's license to practice. Dr. Sheikh has successfully completed her residency training and she has received a Certificate of Residency Completion from University of California Davis. Dr. Sheikh is a distinguished physician for her medical knowledge and for her compassion towards welfare of her patients. Yet State denies her application for license.

The State accused plaintiff for incompetency, Dishonesty and lack of interpersonal skills. The State had an administrative hearing on denial of her application for license. The State failed to prove its accusations against Dr. Sheikh; nonetheless, the State denied her application for license. Dr. Sheikh seeks Writ of this Court to reverse denial of application for license and an order for immediate approval of her application for license.

## IV.   FACTUAL BACKGROUND

### *A.   DR. SHEIKH'S MEDICAL EDUCATION AND RESERACH*

4)   During year 2000, Dr. Sheikh relocated to San Francisco Bay area in California from Texas.

5)   Dr. Sheikh had completed her Medical Education from Karachi Pakistan with high marks.

6)   During Year 2002 Dr. Sheikh applied for PTAL and received approval of PTAL/training license.

7)   The Medical Board completed review of Dr. Sheikh's application for license during or around November 2007.

8)   The Medical Board stated that Program Director Dr. A of Austin Texas gave Dr. Sheikh credit for 7 month residency training in lieu of 12 month residency training with that residency program.

9)   The Medical Board stated that Dr. Sheikh did not have credit for 24 month residency training.

10)  By November 2007, Dr. Sheikh had completed 29 month residency training.

        i.   In order to be eligible for physician's license, a credit for 24 month residency training is required for Medical students who have complete their medical education at a recognized Medical School <u>outside</u> the United States of America.

        ii.   In order to be eligible for physician's license, a credit for 12 month residency training is required for Medical students who complete their medical education at a recognized Medical School <u>in</u> the United States of America.

11)  The Medical Board denied Dr. Sheikh's application for license in a letter dated December 16 2008; The denial was based only on:

        i.   Dishonesty for checking a 'wrong box' for informing the Medical Board that her contract with her previous residency program was not renewed.

### *B.   FIRST STATEMENT OF ISSUES (Accusations against Dr. Sheikh) March 2009*

12)  The Medical Board published a Statement of Issues with the following accusations;

        i.   Dishonesty for checking the wrong box (Business & Professional Code section 480)

        ii.   Incompetency for Residency training in Austin Texas.

13)  Dr. Sheikh, via her representative Sheikh (her husband) submitted detailed 13 pages objections on the Statement of Issues.

### C.  SECOND STATEMENT OF ISSUES (Accusations against Dr. Sheikh) MAY 2009

14)  The Medical Board issued an amended statement of issues (May 2009) and withdrew the accusations of Incompetency.

15)  The basis of denial for license was;

  i.  Dishonesty for checking the wrong Box on the application form

16)  However, the Board once again used the same language of "unspecified concerns on Dr. Sheikh's knowledge during her first year residency"; this time under the disguise of accusations of Dishonesty.

### D.  SECOND SETTLEMETN OFFER – Stipulation For An Unrestricted License Requiring Acceptance Of Unprofessional Conduct – MAY 2009

17)  During May 2009, the Medical Board offered a Settlement agreement to Dr. Sheikh offering an unrestricted and standard license to practice in California.

18)  However, the license was subject to acceptance of accusation of unprofessional conduct for checking the wrong Box. Dr. Sheikh did not agree with the proposal.

### E.  FIRST ADMINISTRATIVE HEARING

19)  An administrative hearing was held on or around August 12, 2009.

20)  The Court noted that the Medical Board does not have a burden of proof for brining accusations against Dr. Sheikh.

21)  Dr. Sheikh sought continuance. Dr. Sheikh stated that an administrative law judge had ordered that the Medical Board provide relevant documentation to Dr. Sheikh and that the Medical Board has not complied with Judge's orders.

22)  Dr. Sheikh also sought attention of the Court, however, she was not successful. Dr. Sheikh never received requested documentations relevant to accusations of the Board and a copy of her file with the Board.

23)  The hearing was later rescheduled for another issue that was presented before the Court.

### F. *SECOND ADMINISTRATIVE HEARING*

24) A second administrative hearing was held on or around October 2009.

25) Dr. Sheikh did not have the opportunity to present exculpatory evidence before the administrative law judge..

26) On or around November 25, Dr. Sheikh received a Notice of Denial of her application of license.

27) The decision did not find Dr. Sheikh guilty of the accusations of the Medical Board. Yet the Board recommended denial of her application for license.

### G. *MEDICAL BOARD HAS NOT COMPLIED WITH THE DISCOVERY ORDER OF ADMINISTRATIVE LAW JUDGE*

28) An administrative Law Judge (ALJ) had ordered the Medical Board to provide specific documentation to Dr. Sheikh by August 10, 2009. The Judge had determined that specific documentation will be necessary in order to provide Dr. an opportunity to demonstrate her eligibility for the license.

29) Dr. Sheikh was not provided with the documentation and she is unable to present her defense until she is aware of nature of the accusation of the Medical Board.

### H. *MEDICAL BOARD CLAIMS THAT IT DOES NOT HAVE A BURDEN OF PROOF FOR BRINGING ACCUSATIONS AGAINST PHYSICIANS*

30) In the administrative proceedings, the Medical Board and the office of administrative hearings has stated that the Medical Board does not have a burden of proof for bringing accusations against Dr. Sheikh.

31) The Standard of Review applied in the administrative proceedings was mere preponderance of Evidence rather than 'Clear and Convincing Evidence'.

## V. REPRESENTATION

32) Dr. Sheikh submits this petition via Mr. Sheikh, her husband who is not an attorney licensed with any State. Dr. Sheikh requests that the Court allow her to proceed in this manner.

33) Dr. Sheikh has sought representation by Mr. Sheikh in unique and special circumstances.

34) Mr. Sheikh has represented Dr. Sheikh in the administrative Hearings before the State Agencies.

35) Mr. Sheikh has also represented Dr. Sheikh before California Superior Court(s).

36) Mr. Sheikh will comply with the procedures of this Court. Mr. Sheikh has previously pleaded before another District Court in California.

## VI. PRAYER

WHEREFORE, plaintiff respectfully requests relief as follows:

37) Dr. Sheikh will seek annulment of the state's decision to deny her application for license on factual, statutory and Constitutional basis.

38) Plaintiff seeks costs and reasonable attorney fee(s) as much available.

39) Plaintiff seeks such relief that this Court may deem appropriate.


Respectfully Submitted,


Dated: January 26, 2010        ----------------------------------

Rehan Sheikh
Engineer &
Representative for Dr. Sheikh

**CERTIFICATE OF SERVICE**

I declare that:

I am, at the time of service of the papers, a resident of the state of California and over the age of eighteen years: my mailing address is PO Box 869, French Camp California. I served the following document (s):

**PETITION FOR WRIT OF REVIEW**
EXHIBIT A- STATEMENT OF ISSUES
EXHIBIT B- DECISION
EXHIBIT C- BUS_PROF CODE 2335

[  ] **BY MAIL**: (CCP 1013 and 1013a)

[ x ]  By placing the documents(s) listed above for **USPS MAIL** delivery in a sealed envelope, addressed as set forth below, and placing the envelope with the United States Postal Service for collection and delivery to:

Barbara Johnston
Executive Director, Medical Board of California
2005 Evergreen Street, Suite 1200
Sacramento, California 95815-3831

Office of Attorney General
California Department of Justice
P.O. Box 944255
Sacramento, CA 94244-2550

[  ]   **BY FACSIMILE**: (CCP 1013e and f): from fax number (209) 468 6392 to the fax numbers listed on the attached mailing list.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed on January 27, 2010 at French Camp California:

Rehan Sheikh

EXHIBIT A

1    EDMUND G. BROWN JR., Attorney General
     of the State of California
2    JOSE R. GUERRERO
     Supervising Deputy Attorney General
3    SUSAN K. MEADOWS, STATE BAR NO. 115902
     Deputy Attorney General
4    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA 94102-7004
5    Telephone: (415) 703-5552
     Facsimile: (415) 703-5480
6

7    Attorneys for Complainant

FILED
STATE OF CALIFORNIA
MEDICAL BOARD OF CALIFORNIA
SACRAMENTO MARCH 27, 2009
BY: Sketchik           ANALYST

8                          BEFORE THE
                 MEDICAL BOARD OF CALIFORNIA
9              DEPARTMENT OF CONSUMER AFFAIRS
                     STATE OF CALIFORNIA
10

11   In the Matter of the Statement of Issues Against:        Case No. 20-2009-196933

12   **FARANZA SHEIKH**
     **P.O. Box 869**                                         **STATEMENT OF ISSUES**
13   **French Camp, CA 95231**

14
                                  Applicant
15

16

17            Complainant alleges:

18                          **PARTIES**

19            1.       Barbara Johnston (Complainant) brings this Statement of Issues solely in

20   her official capacity as the Executive Director of the Medical Board of California (Board),

21   Department of Consumer Affairs.

22            2.       On or about July 11, 2002, the Medical Board of California[1] received an

23   application for a Physician's and Surgeon's License from Farzana Sheikh (applicant).  On or

24   about September 20, 2007, applicant submitted an Initial and Update Application for Physician

25   and Surgeon's License or Postgraduate Training Authorization Letter (Application).  Applicant

26   ─────────────────

27       1. The term "board" means the Medical Board of California.  "Division of Licensing" shall
     also be deemed to refer to the Medical Board.  (Bus. and Prof. Code, § 2002.)
28

                                        1

1  certified under penalty of perjury to the truthfulness of all statements, answers, and

2  representations in the updated Application. On or about December 16, 2008, the Board denied

3  the Application. On or about January 8, 2009, the Board received applicant's request for a

4  hearing on the denial of her application.

5  <center>**JURISDICTION**</center>

6     3.    This Statement of Issues is brought before the Board, Department of

7  Consumer Affairs, under the authority of the following laws. All section references are to the

8  Business and Professions Code unless otherwise indicated.

9     4.    Section 475 of the Code states:

10     "(a) Notwithstanding any other provisions of this code, the provisions of this

11  division shall govern the denial of licenses on the grounds of:

12     "(1) Knowingly making a false statement of material fact, or knowingly omitting

13  to state a material fact, in an application for a license.

14     " . . . . . . . . .

15     "(3) Commission of any act involving dishonesty, fraud or deceit with the intent

16  to substantially benefit himself or another, or substantially injure another.

17     "(4) Commission of any act which, if done by a licentiate of the business or

18  profession in question, would be grounds for suspension or revocation of license."

19     5.    Section 480 states, in pertinent part, that:

20     "(a) A board may deny a license regulated by this code on the grounds that the

21  applicant has one of the following:

22     " . . . . . . . . .

23     "(2) Done any act involving dishonesty, fraud or deceit with the intent to

24  substantially benefit himself or another, or substantially injure another; or

25     "(3) Done any act which if done by a licentiate of the business or profession in

26  question, would be grounds for suspension or revocation of license.

27  //

28  //

<center>2</center>

1  "The board may deny a license pursuant to this subdivision only if the crime or act

2  is substantially related to the qualifications, functions or duties of the business or

3  profession for which application is made.

4  " . . . . . . . . . .

5  "(c) A board may deny a license regulated by this code on the ground that the

6  applicant knowingly made a false statement of fact required to be revealed in the

7  application for such license."

8  6.    Section 2221 of the Code states:

9  "(a) The Division of Licensing may deny a physician's and surgeon's certificate

10  to an applicant guilty of unprofessional conduct or of any cause that would subject a

11  licensee to revocation or suspension of his or her license . . ."

12  7.    Section 2234 of the Code states, in pertinent part, that:

13  "The Division of Medical Quality shall take action against any licensee who is

14  charged with unprofessional conduct. In addition to other provisions of this article,

15  unprofessional conduct includes, but is not limited to, the following:

16  "(a) Violating or attempting to violate, directly or indirectly, assisting in or

17  abetting the violation of, or conspiring to violate any provision of this chapter [Chapter 5

18  of the Medical Practice Act].

19  " . . . . . . . . . .

20  "(d) Incompetence.

21  "(e) The commission of any act involving dishonesty or corruption which is

22  substantially related to the qualifications, functions, or duties of a physician and surgeon.

23  "(f) Any action or conduct which would have warranted the denial of a

24  certificate."

25  //

26  //

27  //

28  //

3

# FIRST CAUSE FOR DENIAL OF APPLICATION

## (Incompetence)

8. Applicant's application is subject to denial under sections 475, subdivision (a)(4); 480, subdivision (a)(3); and, 2221, subdivision (a), through section 2234, subdivision (d) of the Code, for unprofessional conduct for incompetence in that on or about February 2, 2006, applicant was advised that her contract at the Austin Medical Education Program (AMEP) for the 2006/2007 postgraduate training year would not be renewed. The program director advised applicant, both verbally and in writing, that serious concerns had been expressed about her clinical skills, medical knowledge and judgment, patient care, integrity, reliability, and interpersonal relationships. Applicant appealed the non-renewal of her contract and on May 19, 2006, she was advised that her appeal was unsuccessful and the non-renewal of her postgraduate training program contract would remain a final decision. The circumstances are as follows:

A. Applicant received her medical degree from Sind Medical College Karachi, M.B.B.S., Pakistan which she attended from 1991-1996.

## AMEP

### (2005-2006)

B. From June 2005 through June 2006, applicant attended the AMEP for her postgraduate training. After receipt of applicant's application for licensure, the Board obtained documents from AMEP regarding applicant's performance in that program. The program reports that were reviewed revealed that applicant encountered immediate difficulties in the training program that continued throughout the end of the training. year. The reports indicate that concerns were noted in the following areas: clinical skills, knowledge base, pharmacology, and interpersonal skills. As of result, the program reports revealed that applicant required additional supervision by attending physicians and residents. Applicant was advised on or about February 2, 2006, by her program director that the continued expressed concerns regarding her performance had resulted in the non-renewal of her contract for the 2006/2007 postgraduate training year.

//

4

1    9.    Therefore, applicant's application for licensure is subject to denial under

2    sections 475 (a)(4); 480 (a)(3); and, 2221 (a) through section 2234 (d), of the Code in that

3    applicant's performance at AMEP was considered inadequate after one year, and her

4    postgraduate training program contract was not renewed as a result of applicant being deficient in

5    her clinical skills, knowledge base, pharmacology, and interpersonal skills.

6                    **SECOND CAUSE FOR DENIAL OF APPLICATION**

7                                    (Dishonesty)

8    10.    The allegations of the First Cause For Denial of Application as set forth

9    above, are incorporated herein by reference as if fully set forth.

10    11.    Applicant's application is subject to denial under sections 475, subdivision

11   (a)(1) and 480, subdivision (c) of the Code [knowingly making a false statement of fact or

12   omitting a material fact required to be revealed in the application for license]; sections 475,

13   subdivision (a)(3) and 480, subdivision (a)(2) of the Code [any act involving dishonesty, fraud or

14   deceit with the intent to substantially benefit himself]; sections 475, subdivision (a)(4) and 480,

15   subdivision (a)(3) [commission of any act which would be grounds for suspension or revocation

16   if done by a licentiate]; and, section 2221, subdivision (a), through section 2234, subdivision (e)

17   [denial of a license for unprofessional conduct for commission of an act involving dishonesty or

18   corruption] in that applicant was not truthful in her responses to Question 14 on her Application

19   dated September 20, 2007, and she failed to disclose material information in her application

20   while certifying under penalty of perjury to the truthfulness of all statements, answers, and

21   representations in the Application.

22    12.    On or about September 20, 2007, applicant submitted her Application. On

23   the last page of the Application, applicant initialed the box next to the statement "I understand

24   that falsification or misrepresentation of any item or response on this application or any

25   attachment hereto is a sufficient basis for denying or revoking a license." Applicant signed the

26   Application under penalty of perjury declaring that all of the information contained in the

27   Application was true and correct, and she authorized all hospitals, institutions and employers to

28   release to the Medical Board of California any information necessary to determine her

5

1  competence and professional conduct to engage in the practice of medicine. Applicant's
2  signature to the Application was notarized.

3          13.     Question 14 at page L1B of the Application, regarding Postgraduate
4  Training, asks a postgraduate the following questions:

5          "Have you ever taken a leave of absence or break from your training?" Applicant
6  checked the box "Yes."

7          "Were any limitations or special requirements placed on you for clinical
8  performance, discipline, or for any other reason?" Applicant checked the box "No."

9          "Have you ever had a postgraduate training program contract not be renewed or
10 offered for a following year? Applicant checked the box "No."

11         The Application states that, "A 'yes' response to Questions 14 through 38 requires
12 a written explanation on a separate sheet of paper along with any supporting materials."

13         14.     At the time applicant completed the Application in September of 2007, she
14 was aware that her postgraduate training contract at AMEP had not renewed even though she
15 answered "No" in her response to Question 14.

16         15.     At the time applicant completed the Application in September of 2007, she
17 was aware that she had taken a stress leave of absence from AMEP, from February 28, 2006, to
18 March 31, 2006, after she had been advised that her contract at AMEP had not been renewed as a
19 result of concerns expressed by the faculty about her clinical skills and/or her refusal to undergo
20 remediation. Applicant failed to accurately represent the complete reasons for this leave of
21 absence on her Application to the Board as required.

22         16.     At the time applicant completed the Application in September of 2007, she
23 was aware that before her leave of absence from AMEP, and upon her return to AMEP after her
24 leave of absence, restrictions and/or special limitations were placed on her clinical rotations by
25 AMEP. Applicant did not did not disclose this information on her Application as required, and,
26 in fact, responded "No" on the Application in response to whether any limitations or special
27 requirements were placed on her based upon her clinical performance in her postgraduate
28 training. A review of the documents submitted by applicant and AMEP reveal that applicant

6

1 | required additional supervision to ensure patient safety, was required to undergo a third Family
2 | Practice rotation, was not allowed to participate in a Community Medicine rotation or an Elective
3 | Rotation, and, upon her return to AMEP after her leave of absence, was only allowed to complete
4 | the remaining rotations that had been assigned to her.

5 |         17.    Based on the allegations contained paragraphs 10 through 16, inclusive,
6 | applicant's application is subject to denial in that she was not truthful in answers and/or failed to
7 | disclose material information on her application for licensure, which she certified under penalty
8 | of perjury to the truthfulness of all statements, answers, and representations in violation of
9 | sections 475 (a)(1) and 480 (c) of the Code; and/or sections 475 (a)(3) and 480 (a)(2) of the
10 | Code; and/or sections 475 (a)(4) and 480 (a)(3) of the Code; and/or section 2221, through section
11 | 2234 (e).

12 | **PRAYER**

13 |        WHEREFORE, Complainant requests that a hearing be held on the matters herein
14 | alleged, and that following the hearing, the Medical Board of California issue a decision:

15 |        1.    Denying the application of Farzana Sheikh for a Physician's and Surgeon's
16 | Certificate;

17 |        2.    Ordering applicant to pay the Medical Board of California the costs of
18 | probation monitoring upon order of the Board; and,

19 |        3.    Revoking, suspending or denying approval of the applicant's authority to
20 | supervise physician assistants; and

21 |        4.    Taking such other and further action as deemed necessary and proper.

22 | DATED: March 27, 2009.

23 |                  BARBARA JOHNSTON
                 Executive Director
24 |                  Medical Board of California
                 Department of Consumer Affairs
25 |                  State of California
                 Complainant

26 |
27 |
28 |

7

EXHIBIT B

| In the Matter of the Statement Of Issues | ) |
|---|---|
| Against: | ) |
| | ) |
| | ) |
| **FARZANA SHEIKH** | ) | File No. 20-2009-196933 |
| | ) |
| | ) |
| | ) |
| | ) |
| Applicant. | ) |

## DECISION

The attached Proposed Decision and Disciplinary Order is hereby adopted as the Decision and Order of the Medical Board of California, Department of Consumer Affairs, State of California.

This Decision shall become effective at 5:00 p.m. on December 28, 2009.

IT IS SO ORDERED    November 25, 2009    .

MEDICAL BOARD OF CALIFORNIA

By: _____

**Hedy Chang**
**Chairperson, Panel B**

In the Matter of the Amended Statement of
Issues Against:

FARZANA SHEIKH,
French Camp, CA.

(No Current License)

Applicant.

Case No. 20-2009-196933

OAH No. 2009050926

## PROPOSED DECISION

Administrative Law Judge Ann Elizabeth Sarli, Medical Quality Hearing Panel, Office
of Administrative Hearings (OAH), heard this matter on October 29, 2009, in Sacramento,
California.

Susan K. Meadows, Deputy Attorney General, represented complainant, Barbara
Johnston, Executive Director of the Medical Board of California (Board).

Applicant, Farzana Sheikh, did not appear, nor did anyone appear on her behalf.

Evidence was presented. The record was closed and the matter submitted for decision
on October 29, 2009.

## PROCEDURAL FINDINGS

1.      On July 11, 2002, the Medical Board of California (Board) received an
application for a Physician's and Surgeon's license from Farzana Sheikh (applicant). On
September 20, 2007, applicant submitted an Initial and Update Application for Physician's and
Surgeon's License or Postgraduate Training Authorization Letter (application).

2.  ·    The Board denied the application for licensure on December 16, 2008, alleging
applicant made false statements on her application. Applicant requested a hearing and
complainant filed a Statement of Issues on May 21, 2009. Applicant timely filed a Notice of
Defense. A hearing on the Statement of Issues was set for October 29, 2009 at 9:30 a.m. at the
OAH. On August 14, 2009, applicant was duly served with an Amended Notice of Hearing at

1

her address of record with the Board. Applicant moved for a "cancellation" of the hearing, which was deemed a motion for continuance. The motion was denied due to applicant's failure to show good cause for continuance and due to the fact that applicant had previously been granted a continuance to allow her time to seek counsel.

3. On October 28, 2009, at 9:03 p.m., applicant's husband and self styled "representative" faxed a letter to OAH Presiding Judge Jonathan Lew, referring to a need for "investigation" into actions taken by the OAH. The letter stated in its concluding paragraph "This is clear that there is no need for any hearing until your office undertakes this investigation." Applicant did not appear at the noticed hearing. Accordingly, the matter proceeded under the default provisions of Government Code section 11520, subdivision (a).

## FACTUAL FINDINGS

1. Applicant received her medical degree from Sind Medical College in Pakistan in 1996. From June 2005 through June 2006, she attended the Austin Medical Education Program (AMEP) in Texas for postgraduate training. On February 2, 2006, AMEP advised applicant that it would not renew her contract for the 2006/2007 postgraduate training year. In 2006, applicant entered a postgraduate training program at San Joaquin General Hospital in French Camp, California.

2. To qualify for licensure in California, applicants who are graduates of an international medical school must complete at least four months of postgraduate training in general medicine. The general medicine requirement may be satisfied by actual clinical practice where the applicant has direct patient care responsibilities in any particular specialty or subspecialty area for at least four months. The application process requires applicants to submit an initial application and updated applications during the postgraduate training. Applicant submitted an initial application for licensure in 2002.[1] She submitted an updated application in March 2007 and another dated September 20, 2007. In the September 20, 2007, updated application, applicant was asked the following in Question #14 of the Post Graduate Training section:

■ Did you ever take a leave of absence or break from your training?

■ Were any limitations or special requirements placed upon you for clinical performance, discipline, or for any other reason?

■ Have you ever had a postgraduate training program contract not be renewed or offered for the following year?

---

[1] The application is entitled "Initial and Update Application For Physician's And Surgeon's License OR Postgraduate Training And Authorization Letter."

3.     The application instructed that a "Yes" response to Question 14 required a written explanation on a separate sheet of paper along with any supporting materials. Applicant answered "yes" to the question "Did you ever take a leave of absence or break from your training?" However, she did not include an explanation or supporting documents.

4.     Applicant answered "No" to the questions: "Did you ever take a leave of absence or break from your training?" and "Were any limitations or special requirements placed upon you for clinical performance, discipline, or for any other reason?"

5.     Applicant signed the application under oath attesting to the truth of her responses. In addition, the attestation clause contained a statement in capital letters and bold type face which read: "I UNDERSTAND THAT FALSIFICATION OR MISREPRESENTATION OF ANY ITEM OR RESPONSE ON THIS APPLICATION OR ANY ATTACHMENT HERETO IS A SUFFICIENT BASIS FOR DENYING OR REVOKING A LICENSE."

6.     On June 7, 2007, the Board received a Certificate Of Completion Of ACGME/RCPSC Postgraduate Training (Certificate), completed by S.B. Adkins III, M.D., Residency Director of the Austin Medical Education Program Family Medicine Residency. Dr. Adkins verified that applicant had completed a minimum of four months of general medicine as part of their postgraduate training program. In a section of the Certificate entitled "Unusual Circumstances," Dr. Adkins answered "Yes" to the following questions:

■ Did the trainee ever take a leave of absence or break from their training?

■ Were any limitations or special requirements placed upon the trainee for clinical incompetence, disciplinary problems or for any other reason?

■ Did the program decline to offer or renew the trainee a postgraduate training program contract for the following year?

7.     Dr. Adkins attached a letter stating that applicant was a resident in family medicine from June 25, 2005 through June 24, 2006. She took a leave of absence from March 2, 2006 through April 3, 2006. He noted that several faculty expressed concerns about her clinical skills and as a result she was offered remediation, but declined. She was not offered a contract to continue for second-year residency.

8.     The Board obtained a copy of a February 2, 2006, letter from Dr. Adkins to applicant. The letter summarized the discussion they had on February 2, 2006, regarding her performance evaluations. In pertinent part, the letter noted that they discussed the fact that applicant had been required to undergo some remediation for subpar performance during her first rotation, which was in internal medicine. The letter noted that during applicant's second and third rotations she completed modified rotations on the family medicine in patient service. She was provided a higher level of supervision and instruction than is normally required for first-year residents. She was given more time off and her patient loads were reduced compared

3

to her peers. Her performance on these rotations indicated that she was making progress, but she continued to need more supervision than Dr. Adkins would have expected for a first-year resident. He noted that she received overall evaluations that were less than competent.

The letter also noted that applicant had successfully completed internal medicine, pediatric wards and surgery rotations. She did not have as much success during her pediatric wards rotation in December 2006, and training examination results of November 2006 were very concerning. He concluded that her scores, the third percentile nationally, indicated that she had a significant knowledge deficit.

The letter went on to explain Dr. Adkins' concerns regarding applicant's clinical abilities and her need for significantly more experience before she is able to function at the level of her colleagues or serve in the role of the supervising resident. He noted his concern about the amount of stress she was experiencing and suggested she take time off to be with her family. He concluded that in order to successfully remediate deficiencies as serious as hers, it would be essential for her to have the ability to accept and act upon constructive criticism without defensiveness or a tendency to deny or discount the criticisms. He concluded that she did not have this ability and therefore he was unable to offer her a contract of promotion after her current contract ended on June 25, 2006.

9. The Board also obtained documents from AMEP verifying that applicant had taken a leave of absence through the month of March 2006.

10. The evidence is persuasive that applicant truthfully answered the application question "Did you ever take a leave of absence or break from your training?" However, she failed to provide a written explanation for her leave of absence, as required in the application instructions.

11. The evidence is persuasive that applicant did not truthfully answer the application question "Have you ever had a postgraduate training program contract not be renewed or offered for the following year?" Applicant was aware that AMEP declined to offer her a renewal contract for 2006 – 2007, the second year of postgraduate training.[2]

12. The evidence is persuasive that applicant did not truthfully answer the application question "Were any limitations or special requirements placed upon you for clinical performance, discipline, or for any other reason?" Early in 2006, AMEP required applicant to undergo remediation for subpar performance during her internal medicine rotation. Her second and third rotations in family medicine inpatient service were modified so that she had a higher level of supervision and instruction, was given more time off and had reduced patient loads. Applicant was aware that these limitations and special requirements were placed upon her to assist her in bringing her clinical performance up to standards.

---

[2]     Applicant did answer this question truthfully in her March 2007 but, but did not include an explanation as required in the instructions.

13.     As a result of applicant's refusal to participate in the hearing, there was no evidence in the record to support issuance of a probationary license at this time.

## LEGAL CONCLUSIONS

1.     Business and Professions Code[3] section 2221 provides in pertinent part that the Board may deny a physician's and surgeon's certificate to any applicant guilty of unprofessional conduct or guilty of any cause that would subject a licensee to revocation or suspension of license. The Board in its sole discretion may issue a probationary certificate to an applicant subject to terms and conditions.

2.     Section 2234 states in pertinent part that the Board may take action against any licensee who is charged with unprofessional conduct. Unprofessional conduct includes the commission of any act involving dishonesty which is substantially related to the qualifications, functions, or duties of a physician and surgeon (subdivision (e)).

3.     Section 2261 states in pertinent part that it is unprofessional conduct to knowingly make or sign any certificate or other document directly or indirectly related to the practice of medicine which falsely represents the existence or nonexistence of the state of facts.

4.     Section 475, subdivision (a), sets forth the following grounds for denial of the license: subdivision (a)(1), knowingly making a false statement of material fact, or knowingly omitting to state a material fact in an application for a license; subdivision (a)(3), commission of any act involving dishonesty, fraud or deceit with the intent to substantially benefit himself or another, or substantially injure another; subdivision (a)(4), commission of any act which, if done by a licentiate of the business or profession in question, would be grounds for suspension or revocation of the license.

5.     The prohibitions of section 475 are repeated in section 480, subdivisions (a), and (c).

6.     As set forth in the Findings, complainant has established grounds for denial of a physician's and surgeon's certificate, pursuant to sections 2221, 2234, 2261, 475, subdivision (a) and 480, subdivisions (a) and (c). Applicant has not met her burden of showing that she is presently fit for licensure.

---

[3] All statutory references are to the California Business and Professions Code unless otherwise stated.

5

## ORDER

The application of Farzana Sheikh for a Physician's and Surgeon's Certificate is DENIED.

Dated: November 3, 2009

ANN ELIZABETH SARLI
Administrative Law Judge
Medical Quality Hearing Panel
Office of Administrative Hearings
State of California

6

EXHIBIT C

C

**Effective: January 1, 2010**

West's Annotated California Codes Currentness
  Business and Professions Code (Refs & Annos)
    Division 2. Healing Arts (Refs & Annos)
      🕮 Chapter 5. Medicine (Refs & Annos)
        🕮 Article 13. Medical Adjudication (Refs & Annos)
        → **§ 2335. Proposed decisions and interim orders of Medical Quality Hearing Panel**

(a) All proposed decisions and interim orders of the Medical Quality Hearing Panel designated in Section 11371 of the Government Code shall be transmitted to the executive director of the board, or the executive director of the California Board of Podiatric Medicine as to the licensees of that board, within 48 hours of filing.

(b) All interim orders shall be final when filed.

(c) A proposed decision shall be acted upon by the board or by any panel appointed pursuant to Section 2008 or by the California Board of Podiatric Medicine, as the case may be, in accordance with Section 11517 of the Government Code, except that all of the following shall apply to proceedings against licensees under this chapter:

(1) When considering a proposed decision, the board or panel and the California Board of Podiatric Medicine shall give great weight to the findings of fact of the administrative law judge, except to the extent those findings of fact are controverted by new evidence.

(2) The board's staff or the staff of the California Board of Podiatric Medicine shall poll the members of the board or panel or of the California Board of Podiatric Medicine by written mail ballot concerning the proposed decision. The mail ballot shall be sent within 10 calendar days of receipt of the proposed decision, and shall poll each member on whether the member votes to approve the decision, to approve the decision with an altered penalty, to refer the case back to the administrative law judge for the taking of additional evidence, to defer final decision pending discussion of the case by the panel or board as a whole, or to nonadopt the decision. No party to the proceeding, including employees of the agency that filed the accusation, and no person who has a direct or indirect interest in the outcome of the proceeding or who presided at a previous stage of the decision, may communicate directly or indirectly, upon the merits of a contested matter while the proceeding is pending, with any member of the panel or board, without notice and opportunity for all parties to participate in the communication. The votes of a majority of the board or of the panel, and a majority of the California Board of Podiatric Medicine, are required to approve the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

decision with an altered penalty, to refer the case back to the administrative law judge for the taking of further evidence, or to nonadopt the decision. The votes of two members of the panel or board are required to defer final decision pending discussion of the case by the panel or board as a whole. If there is a vote by the specified number to defer final decision pending discussion of the case by the panel or board as a whole, provision shall be made for that discussion before the 100-day period specified in paragraph (3) expires, but in no event shall that 100-day period be extended.

(3) If a majority of the board or of the panel, or a majority of the California Board of Podiatric Medicine vote to do so, the board or the panel or the California Board of Podiatric Medicine shall issue an order of nonadoption of a proposed decision within 100 calendar days of the date it is received by the board. If the board or the panel or the California Board of Podiatric Medicine does not refer the case back to the administrative law judge for the taking of additional evidence or issue an order of nonadoption within 100 calendar days, the decision shall be final and subject to review under Section 2337. Members of the board or of any panel or of the California Board of Podiatric Medicine who review a proposed decision or other matter and vote by mail as provided in paragraph (2) shall return their votes by mail to the board within 30 days from receipt of the proposed decision or other matter.

(4) The board or the panel or the California Board of Podiatric Medicine shall afford the parties the opportunity to present oral argument before deciding a case after nonadoption of the administrative law judge's decision.

(5) A vote of a majority of the board or of a panel, or a majority of the California Board of Podiatric Medicine, are required to increase the penalty from that contained in the proposed administrative law judge's decision. No member of the board or panel or of the California Board of Podiatric Medicine may vote to increase the penalty except after reading the entire record and personally hearing any additional oral argument and evidence presented to the panel or board.

CREDIT(S)

(Added by Stats.1993, c. 1267 (S.B.916), § 32. Amended by Stats.1995, c. 708 (S.B.609), § 10.1; Stats.2007, c. 588 (S.B.1048), § 30; Stats.2007, c. 678 (A.B.253), § 23; Stats.2009, c. 308 (S.B.819), § 25.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.